SUTTER *v.* PERE MARQUETTE RAILWAY CO.

1. RAILROADS—NEGLIGENCE—CROSSING ACCIDENT—WHETHER CROSS-
   ING COMPLIED WITH STATUTE A JURY QUESTION.
   Testimony that there was only one plank on each side
   of the rails, that the roadbed between the rails was filled
   in with sand and gravel, and that there was a sharp
   rise of from six to nine inches from the wheel track up
   to the top of the plank, at a highway crossing over a
   railroad track, presented a question for the jury as to
   whether the crossing was such as is required by 2 Comp.
   Laws 1915, § 8243, as amended by Act No. 270, Pub.
   Acts 1921.[1]

2. SAME — NEGLIGENCE — SUBSEQUENT NEGLIGENCE—QUESTION FOR
   JURY.
   Whether defendant's engineer, who had an unobstructed
   view of the track for half a mile, was guilty of sub-
   sequent negligence in failing to stop his train and avoid
   striking plaintiff's truck, which was stalled upon the
   track at a street crossing, was a question for the. jury.[2]

3. SAME—CONTRIBUTORY NEGLIGENCE.
   The failure of an automobile driver to look and listen
   before driving upon a railroad track was negligence.[3]

4. SAME — WHETHER NEGLIGENCE OF AUTOMOBILE DRIVER CON-
   TRIBUTED TO ACCIDENT A JURY QUESTION.
   The negligence of an automobile driver in failing to look
   and listen before driving upon a railroad track cannot
   be said, as a matter of law, to have contributed to the
   accident, if, at the time, the train was half a mile away,
   and he could have crossed in safety had it not been for
   the condition of the crossing and the subsequent neg-
   ligence of the engineer.[4]

5. SAME—CONCURRENT NEGLIGENCE.
   Where, when his truck stalled upon a railroad track, the
   train was half a mile away. it was not negligence for

---

[1]Railroads, 33 Cyc. p. 1100; [2]Id., 33 Cyc. p. 1129; [3]Id., 33 Cyc.
p. 1000; [4]Id., 33 Cyc. p. 1128.

the driver to try to remove the truck, but, in the absence of obvious personal danger, it was his duty to do so.[5]

6. SAME—WEIGHT OF EVIDENCE.
    The verdict in favor of plaintiff, *held*, not against the overwhelming weight of the evidence.[6]

Error to Genesee; Reid (Neil E.), J., presiding. Submitted January 9, 1925. (Docket No. 65.) Decided April 3, 1925.

Case by George Sutter against the Pere Marquette Railway Company for personal and other injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*W. K. Williams, John C. Shields,* and *Carton & Stewart,* for appellant.

*Charles A. Withey* and *Thomas Stockton,* for appellee.

MCDONALD, C. J. This action is brought to recover damages for injuries received in a collision between one of the defendant's passenger trains and a Ford truck owned and driven by the plaintiff. A public highway, known as the Atherton road, crosses the defendant's tracks within the southerly limits of the city of Flint. At the time of the accident the plaintiff was driving westerly along this road. When he got upon the crossing his car stalled and before he could get it off one of the defendant's trains ran into him. The truck was demolished and the plaintiff received injuries which incapacitated him for a period of 11 weeks. He brought this suit to recover his damages and obtained a judgment of $1,366.

The declaration recites the following allegations of negligence:

(1) The defendant's failure to give warning of the

[5]Railroads, 33 Cyc. p. 1049; [6]Appeal and Error, 4 C. J. § 2838.

approach of its train to the crossing by blowing a whistle or ringing a bell.

(2) Failure to keep the crossing in a reasonably safe condition for travel, by filling the space between the rails with planks or other equally serviceable material, as required by law.

(3) The operation of its train within the limits of the city of Flint at a speed of 60 miles per hour contrary to the ordinances of the city of Flint.

(4) The subsequent negligence of the defendant in that the engineer had an unobstructed view of plaintiff's truck standing stalled upon the crossing, and saw or should have seen the perilous position in which he was placed, and was a sufficient distance away so that he could have stopped his train in time to have avoided the accident.

At the close of the plaintiff's proofs and again at the close of the case, the defendant moved for a directed verdict on the ground that there was no evidence of negligence on its part, and that the plaintiff was guilty of contributory negligence as a matter of law. After the verdict a motion was made that judgment be entered for the defendant *non obstante veredicto*. A new trial was also requested on the ground that the verdict was excessive and contrary to the overwhelming weight of the evidence. These motions having been denied the defendant brings error.

The first question presented is whether there was any evidence of defendant's negligence. On this question the circuit judge submitted for the consideration of the jury only the claims of the parties as to the condition of the crossing, and as to whether the engineer saw or could have seen the perilous position of the plaintiff in time to stop his train and avoid the accident.

The statutes provide how railroad companies shall construct and maintain their road and street crossings. Section 8243, 2 Comp. Laws 1915, requires

that planks shall be fitted down between and on each side of the rails, "the top of which shall be at least one-half inch higher than the top of the rails of such road." In 1921 an act was passed entitled:

"An act to promote the public safety and make more safe crossings of streets and highways with railroads and railways." Act No. 270, Pub. Acts 1921 (Comp. Laws Supp. 1922, § 8396 [7]).

This act requires that the roadbed between the tracks for the entire width of the traveled portion shall be made and maintained smooth and even by the use of proper and sufficient planking, or other equally serviceable material; and smooth and even at a grade away from the outer rail of the tracks for a distance of 25 feet by the use of such means and such material as are proper and necessary. It is undisputed that planking was not used at this crossing except one plank on either side of the rails. What material was used to make smooth and even the space between the rails does not appear, except in the testimony of Katherine Sutter, wife of the plaintiff, who testified that it was sand and a little gravel. Ralph Adams, a witness for the plaintiff, testified that "the east side of the east plank, east of the east rail, is from six to nine inches from the wheel track up to the top of the plank. It is a very sharp raise." This witness also says that he saw the plaintiff approach and drive upon the crossing. "I saw the front go up and over as the vehicle struck the obstruction, then stop. The truck did not move after that." Willis Van Alstine, who was riding with the plaintiff at the time of the accident, testified: "I remember the bump of the automobile as it went over the tracks on that occasion; the front end jarred up." The plaintiff was not asked to describe the condition of the crossing, but he testified that he had driven over it a half hour before the accident. "I got an awful bump when I struck

the crossing that time." If, as this testimony shows, the roadbed between the rails was filled in with sand and a little gravel, and that there was a sharp rise of from six to nine inches from the wheel track up to the top of the plank on the east side of the east rail, the crossing was not such as the law requires. At least, the testimony was sufficient to make it a question for the jury. The court did not err in submitting it.

As to whether the defendant was guilty of subsequent negligence, we also think there was testimony which justified the court in submitting that question to the jury. It is undisputed that the engineer of the train had an unobstructed view of this crossing when he arrived at the Hemphill road, a half a mile to the south. Willis Van Alstine, who was riding with the plaintiff at the time of the accident and who had a clear view of the track for a half a mile to the south, from which direction the train came, testified that as they approached the crossing he looked for a train and that there was none in sight until the truck went upon the track. There was also testimony that the collision took place from 15 to 40 seconds after the truck stopped, and that the train was running at a speed of 60 miles an hour. The speed of the train, the time which elapsed before it reached the plaintiff after he became stalled upon the crossing, and the testimony of Van Alstine, had a direct bearing upon the defendant's subsequent negligence, and justified the court in submitting that question to the jury.

The defendant's contention that the plaintiff was guilty of contributory negligence assumes that without looking or listening he drove upon the track when the train was in sight and so close to the crossing that it was impossible to avoid the collision. His failure to look and listen was negligence, but did not contribute to the accident if, as he claims, the train

was not in sight but was half a mile away when he drove upon the track, and that he would have crossed in safety had it not been for the condition of¹ the crossing and the negligence of the engineer. These claims were in dispute and the court would not have been warranted in saying that the plaintiff was guilty of contributory negligence, as a matter of law. His instruction on that question was justified by the evidence, and correctly stated the law.

There is some claim of concurring negligence, but that question is not in the case. There is no evidence of the plaintiff's negligence after his car stalled upon the track. Assuming that the train was half a mile away it was not an act of negligence for him to try to save his property and to clear the track for the defendant. In the absence of obvious personal danger, it was his duty to do so. *Deadman* v. *Railway*, 223 Mich. 228.

Several assignments of error relate to the charge of the court and the refusal to give certain requests. The objections for the most part are, that in view of the evidence the court should have charged differently. The court took the view that the evidence in support of the claims of the parties was in conflict and was to be determined by the jury. In this he was right, and as he clearly and fairly stated the claims of the parties and the law applicable thereto, we think the objections pointed out by counsel are without merit.

Lastly, it is urged by counsel that the verdict is against the overwhelming weight of the evidence. We may not agree with this verdict, but in view of the evidence we cannot disturb it without invading the province of the jury. The trial judge who heard the testimony, and who was in a better position than we are to measure and judge the credibility of the witnesses, was of the opinion that the verdict was

not against the clear weight of the evidence.    The presumption is that he reached a correct conclusion. We see no reason for disagreeing with him.

The judgment is affirmed, with costs to the plaintiff.

Clark, Bird, Sharpe, Moore, Steere, Fellows, and Wiest, JJ., concurred.