KROUSE *v.* SOUTHERN MICHIGAN RAILWAY CO.

1. APPEAL AND ERROR—DIRECTED VERDICT—EVIDENCE TO BE CONSIDERED FAVORABLY TO OTHER PARTY.
   In case of a directed verdict in favor of defendant, the evidence must be considered most favorably for plaintiff, on error.

2. NEGLIGENCE — STREET RAILWAYS—CONTRIBUTORY NEGLIGENCE—GROSS NEGLIGENCE.
   In an action for the alleged wrongful death of plaintiff's decedent, where plaintiff's automobile stalled upon defendant's tracks when its car was about 800 feet away, and although decedent recognized her peril and had ample time to seek a place of safety she failed to do so and remained in the automobile until it was struck by the car and she was killed, her negligence was concurrent with that of defendant's motorman, precluding recovery, and the trial court properly directed a verdict in favor of defendant.

3. SAME—CONCURRENT NEGLIGECE OF PLAINTIFF AND DEFENDANT—
   GROSS NEGLIGENCE.
      The rule of gross negligence has no application where
      plaintiff is in position to extricate himself from danger,
      but applies only where the plaintiff cannot, and the de-
      fendant can, prevent the injury.

Error to Berrien; White (Charles E.), J.   Sub-
mitted June 7, 1921.   (Docket No. 18.)   Decided
July 19, 1921.

Case by Charles M. Krouse, administrator of the
estate of Orpha A. Krouse, deceased, against the
Southern Michigan Railway Company for the alleged
negligent killing of plaintiff's decedent.   Judgment
for defendant on a directed verdict.   Plaintiff brings
error.   Affirmed.

*Burns & Hadsell,* for appellant.

*Gore & Harvey,* for appellee.

WIEST, J.   On Sunday, August 25, 1918, Charles
M. Krouse and his wife, Orpha A. Krouse, left
their home near Union in Cass county, in their
Dodge touring car with Arizona Smith, a boy 15
years of age, as driver, to go to Berrien Springs.
While proceeding on their way over the Niles and
Berrien Springs highway they approached the cross-
ing at grade of the defendant's railway track, and
some distance from the crossing Mr. Krouse looked
to the north to see if a car was coming but houses
and trees obstructed his view.   When the automobile
reached a point estimated as 8 or 10 or 12 feet from
the track Mr. Krouse saw a car coming from the north
around a bend 800 or 900 feet or more from the
crossing and told the boy to stop the automobile.   The
boy "killed the engine," and it is claimed the auto-
mobile seemed to "jump right up on the track" and

came to a dead stop between the rails.  Mr. Krouse and the boy were on the front seat and Mrs. Krouse on the back seat with no curtains on the automobile. When the automobile stopped on the track Mr. Krouse got out and told his wife and the boy to jump and he stepped around the automobile and threw up his hands and waved them in an effort to stop the oncoming car.   After he reached the ground and commenced to wave his hands he claims the car was about 350 feet away and coming at a rate of about 15 to 20 miles an hour.   The car struck the automobile, killing Mrs. Krouse, who at the moment of the collision was apparently making an effort to get out of the automobile.

Arizona Smith testified that when the automobile stalled upon the railway track he looked up and saw the car coming 900 or 1,000 feet away and he remained in the automobile and tried to start the engine; he put it in reverse and thought the starter might take it off but it would not, so he threw it out of gear and tried to start it but it would not start and he again glanced up the track and saw the car about 300 feet away and the motorman waved to him to get off the track, and when the car was about 60 feet from him he jumped from the automobile and reached a place of safety.   The highway at the crossing was level with the car tracks.   Paul Dreher, a 12 year old boy, testified that he heard the car whistle and stepped out into the road and saw Arizona get out of the auto, and Mrs. Krouse opened the auto door after Arizona got out and just the instant she opened the door the car struck the auto, and he was not sure whether her foot was on the running board or how far she was out.   James Chapman testified that he saw Mr. Krouse get out of the auto and go around in front of it and get on the track and wave his hands and "after a bit the boy got out," and he saw Mrs.

Krouse get up and make an attempt to get out and just as the car struck the auto he turned his head away. Hillis Smith, a 13 year old boy, testified that he was in a house about 1,000 feet from the crossing and the whistling of the car attracted his attention and he looked and saw fire flying from the car wheels when the car was about three telephone lengths from the crossing. Evelyn Merritt testified that she saw both men get out of the car and one of them get back in and then get out again just before the collision.

At the close of plaintiff's case and at the request of counsel for defendant, the court directed a verdict in favor of defendant on the grounds that plaintiff's decedent was guilty of contributory negligence, and the declaration did not charge gross negligence on the part of defendant. The learned circuit judge expressed himself as follows:

"As I view the law in this case it was negligent on the part of Mrs. Krouse and her husband to drive upon this interurban track under the conditions shown here. It appears by the testimony of Mr. Krouse, when the automobile became stalled on the crossing, he saw the interurban car coming, 800 feet from him. In my judgment, the time which would be consumed by the running of the car over this 800 feet would be sufficient time for Mr. and Mrs. Krouse to have got off the crossing, either get out of the automobile or to have rolled their machine off the crossing. Under those circumstances, and it appearing that they did not do that, and had they done it the accident would have been avoided, in my judgment, as a matter of law, the plaintiff is guilty of such contributory negligence as to prevent a recovery."

A verdict having been directed in favor of the defendant at the close of plaintiff's case, we must consider the evidence in the most favorable view possible upon the question of whether an issue was presented for the jury. The court refused to permit an amendment to the declaration so as to charge gross

negligence on the part of defendant, but inasmuch as defendant now concedes that the declaration as filed charges gross negligence, we may consider whether the plaintiff made a case carrying such an issue to the jury.    If plaintiff failed to make a case for the consideration of the jury under a charge of gross negligence on the part of defendant then no reversible error was committed by the court in directing a verdict for defendant.

Plaintiff contends that, under the undisputed evidence, the death of plaintiff's decedent was caused by the negligent and wrongful act of the defendant amounting to gross and wilful misconduct, in not stopping the car after her peril was apparent, and the motorman could have done so had he exercised reasonable prudence, and that plaintiff's decedent was not guilty of negligence precluding a recovery.    At the trial it was conceded that the automobile was negligently on the crossing, so we need spend no time upon the question of the negligence of plaintiff's decedent in being in a place of danger and turn our attention to the issues raised thereby.

Does the evidence show that the sole proximate cause of the death of plaintiff's decedent was the negligence of defendant's servant in charge of the car, or must it be said from the undisputed evidence that the negligence of plaintiff's decedent continued up to the very time of the accident and, therefore, was a proximate cause of the injury?    This is not a case where the party injured negligently placed herself in a position of danger without reasonable opportunity to get out again in time to avoid injury and, therefore, was injured by reason of failure of the motorman to note her peril and act so as to save her from injury if possible.    Plaintiff's decedent knew of her peril before it could possibly have been apparent to the motorman, and she had ample time after the auto

stalled on the track and she saw the car coming to get out of the auto and to a place of safety. Her husband called to her to get out of the auto when the car was about 800 feet away but for some unexplained reason she made no attempt to do so until it was too late. Whether she believed the boy would be successful in his efforts to start the engine and move the auto from the track, or that her husband might succeed in stopping the oncoming car, we do not know, but the record shows that she was 57 years of age, possessed of all her physical and mental faculties and capable of full movement of her person, and that her husband had ample opportunity to and did get out of the automobile and to a place of safety, and that she remained in the auto without making any effort to get out and to a place of safety until it was too late.

The initial negligence of plaintiff's decedent is admitted, but it is claimed that such negligence was discovered or should have been discovered by the motorman in time to have averted the injury to her. We have in mind the rule that such initial negligence cannot be invoked to defeat a recovery in case of the subsequent negligence of defendant, but as we shall point out the case does not fall within that rule. To find for the plaintiff it would be necessary to determine that after the decedent was negligent in getting on the track the defendant was negligent, and its negligence the latest in the succession of causes. If plaintiff's decedent could have escaped injury by the exercise of ordinary care and she failed to do so then her own negligence was the proximate cause of the accident and there can be no recovery. If plaintiff's decedent's want of ordinary care was in whole or in part a proximate cause of her injury there can be no recovery. *Williams* v. *Edmunds*, 75 Mich. 92. There was ample opportunity after the automobile stalled upon the track for the deceased, in the exercise of

reasonable prudence, to step to a place of safety. She was possessed of all of her faculties and no reason is shown for her delay in responding to the request of her husband to leave the automobile. It may be that she thought Arizona, who was trying to start the engine, would succeed, but this would be no excuse for remaining in a place of danger so apparent that the very basis of plaintiff's claim of right to recover rests upon such peril being cognizant to the motorman of the oncoming car in time to stop. Supplementing the negligence of going on the track the deceased introduced through her own inaction the negligent act of remaining in a place of danger when she could just as well have stepped to a place of safety. Such new negligence, in law, is regarded as the proximate cause of the accident.

There is a vast difference between negligently getting in a place of danger without ability to remove therefrom and remaining in such a place after the danger is apparent and there is opportunity open to avoid injury and a way to escape pointed out. To hold defendant's negligence as the proximate cause of the accident and relieve plaintiff's decedent from her negligence in getting in a place of danger and thereafter remaining therein conscious of her peril and with the way open for her to escape, it would be necessary to find that the negligence of defendant intervened between such negligence of plaintiff and the accident and was the sole proximate cause of the accident. This cannot be done upon this record.

As was said in *Bourrett* v. *Railway Co.*, 152 Iowa, 579, 590 (132 N. W. 973):

"Manifestly, in order that defendant's negligence shall be the sole proximate cause, the plaintiff's negligence must have expended itself before the breach of defendant's duty complained of; for if, notwithstanding defendant's fault, plaintiff's negligence continue to the instant of the accident, either the negli-

215—Mich.—10.

gence of the parties is concurrent, or else plaintiff has had the last opportunity of avoiding the injury."

The principle which controls where the danger is discovered applies to plaintiff's decedent as well as to the defendant. Under the evidence, and the most favorable view thereof, the proximate and efficient cause of the accident involved the concurrent negligence of plaintiff's decedent and defendant, unbroken by any efficient supervening cause. The accident would not have happened if plaintiff's decedent had exercised the most ordinary prudence and removed to a place of safety after her danger was clearly apparent to her. It was her negligence in continuing in the place of danger after she was fully aware of her peril that was as much the efficient cause of the accident as defendant's negligence. Such negligence on her part contributed to the accident as a proximate cause and precludes recovery even though defendant's negligence operated up to the time of the accident. When the auto stalled upon the track it was the duty of defendant's servant, when he saw or should have seen the peril to its occupants, to exercise reasonable care to avoid running the auto down and it was equally the duty of plaintiff's decedent, when she had opportunity to do so, to remove herself to a place of safety.

"It is true, that, when a traveller has reached a point where he cannot help himself, cannot extricate himself, and vigilance on his part will not avert the injury, his negligence in reaching that position becomes the condition and not the proximate cause of the injury, and will not preclude a recovery; but it is equally true, that, if a traveller, when he reaches the point of collision, is in a position to help himself, and by a vigilant use of his eyes, ears and physical strength to extricate himself and avoid the injury, his negligence at that point will prevent a recovery, notwithstanding the fact that the trainman could have stopped the train in season to have avoided injuring him. In such a case, the negligence of plaintiff is concurrent

with the negligence of the defendant, and the negligence of each is operative at the time of the accident. When negligence is concurrent and operative at the time of the collision and contributes to it, there can be no recovery." *French* v. *Railway Co.*, 76 Vt. 441 (58 Atl. 722).

See, also, *Labarge* v. *Railroad Co.*, 134 Mich. 139.

The rule of gross negligence contended for by plaintiff has no application to the facts in this case, but only applies to a case where a plaintiff is in some place of danger from a threatened contact with some agency under the control of the defendant, and where the plaintiff cannot, and the defendant can, prevent the injury. *O'Brien* v. *McGlinchy*, 68 Me. 552.

Upon this record it must be held that both plaintiff's decedent and defendant were contemporaneously and actively in fault and the accident was the result of their mutual carelessness and the plaintiff cannot recover.

The learned circuit judge very properly directed a verdict in favor of the defendant, and the judgment entered below is affirmed, with costs.

STEERE, C. J., and MOORE, FELLOWS, STONE, CLARK, BIRD, and SHARPE, JJ., concurred.