## SCHMID *v.* MOREHEAD.

1. STREET RAILWAYS—RUNNING PEDESTRIAN—CROSSING IN FRONT OF
   STREETCAR—CONTRIBUTORY NEGLIGENCE AS MATTER OF LAW.
   Plaintiff, a man 55 years of age and who had been hard of
   hearing for many years, *held,* guilty of contributory negli-
   gence as a matter of law, where with his hearing aid dis-
   connected he ran northeasterly in front of northbound street-
   car and then closely parallel to easterly rail until he col-
   lided with a place near the front end of the car, since
   plaintiff's negligence continued to operate until the accident
   occurred.

2. SAME—CROSSING IN FRONT OF STREETCARS.
   A reasonably prudent man will not take a chance that streetcars
   will slow up to let him cross street.

3. NEGLIGENCE—SUBSEQUENT NEGLIGENCE—PROXIMATE CAUSE.
   The doctrine of subsequent negligence may be applied only
   where negligent plaintiff has placed himself in a position of
   peril and his negligence ceased to operate as a proximate
   cause, and it must be clearly proved that defendant must have
   discovered, or by the exercise of ordinary care and diligence,
   should have discovered, plaintiff's peril and have had suffi-
   cient time and ability to avoid resulting harm by ordinary
   care and diligence in the use of the means at hand and failed
   to use it to avert the threatened injury.

4. SAME—CONCURRENT NEGLIGENCE.
   Plaintiff may not recover damages for injuries sustained, where
   defendant's negligence was concurrent with, and not sub-
   sequent to, plaintiff's contributory negligence.

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 3–5] 38 Am Jur, Negligence § 212 *et seq.;* 55 Am Jur, Urban
Transportation §§ 210, 241, 265 *et seq.*
[1, 3–5] Doctrine of last clear chance. 92 ALR 47; 119 ALR 1041;
171 ALR 365.

5. Same—Subsequent Negligence.

> The doctrine of subsequent negligence has no application
> where both parties are guilty of concurrent negligence as a
> matter of law.

Appeal from Wayne; Culehan (Miles N.), J. Submitted April 16, 1952. (Docket No. 6, Calendar No. 45,368.) Decided June 2, 1952.

Case by Harold Schmid against Clifton Morehead for injuries suffered when he was hit by a streetcar operated by defendant. Verdict for plaintiff. Judgment for defendant *non obstante veredicto*. Plaintiff appeals. Affirmed.

*W. J. McBrearty* and *James M. Wienner,* for plaintiff.

*Leo A. Sullivan* (*James S. Shields,* of counsel), for defendant.

Boyles, J. Plaintiff brought suit to recover damages for personal injuries sustained by reason of being struck by a streetcar operated by defendant. Plaintiff's declaration, in 2 counts, first declared on defendant's negligence and plaintiff's freedom from contributory negligence, and in the second count alleged subsequent negligence. The trial court submitted the case to the jury on both theories and the jury returned a verdict for plaintiff. On motion, the trial court entered a judgment for defendant *non obstante veredicto* from which plaintiff appeals.

The accident occurred at a safety zone for northbound streetcar passengers located opposite Orchestra Place on Woodward avenue in Detroit. Parsons ends at Woodward from the west, and Orchestra Place starts about 100 feet north at Woodward and continues east. Mack, on the east side of Woodward, is 500 or 600 feet south from Orchestra Place, and

Brady runs east from Woodward between Mack and Orchestra Place.

The accident happened on Sunday, April 25, 1948, between 10 and 11 a.m. Defendant is a motorman on the Woodward avenue streetcar line, then operating a streetcar on the northbound track. It was a spring day, clear, warm, and dry. The traffic on Woodward avenue was lighter than usual week-day traffic.

The plaintiff, a man 55 years of age, had been using a hearing aid for more than 30 years due to progressive deafness. However, at the time of the accident, he did not have it turned on. On the morning in question he had eaten breakfast at a restaurant just south of Parsons street on the west side of Woodward and intended to go to his sister's house by taking a Woodward car north.

The essential facts are not in dispute. Plaintiff testified that he did not remember what happened after he left the restaurant. A witness who saw the entire accident testified as follows: He first saw plaintiff when the plaintiff was 5 feet from the west curb of Woodward near Parsons, that plaintiff was running across Woodward at an angle of about 65 degrees. When plaintiff was crossing the south-bound tracks, the northbound streetcar was 300 to 500 feet south of the east (northbound) safety zone. It was going 20 to 30 miles per hour and when the plaintiff was between 90 and 110 feet south of the south end of the northbound safety zone, he began to run north parallel to the tracks. The street-car sounded its gong twice. Plaintiff continued to run towards the zone. This witness did not see plaintiff turn his head. The streetcar began to slow down gradually 200 feet south of the northbound zone and entered that zone going approximately 10 miles per hour. At no time did plaintiff turn as if to go outside the zone or make any deviation from his

path, which was northward about 2 feet to the east of and parallel to the right rail of the northbound tracks. Both the plaintiff and the streetcar entered the safety zone at about the same time. The right side of the streetcar just behind the front door struck the plaintiff's left side and threw him against a large metal girder.

The defendant motorman on the streetcar was called by the plaintiff as a witness for cross-examination under the statute,* and testified that he was operating north on Woodward a new type of streetcar, his brakes were in good condition, he judged that at 15 miles per hour he could stop in 12 or 15 feet. He testified that when he first noticed the plaintiff he was just leaving the west curb of Woodward at a point 90 to 100 feet south of Parsons, running in a northeasterly direction. At that time the defendant's streetcar had just left the intersection at Mack, traveling between 10 and 20 miles per hour, was about 150 feet to the south of plaintiff. Defendant testified that he checked his speed but did not sound his bell at first and that plaintiff did not look back towards the streetcar while crossing the street. He testified that plaintiff was running and that when plaintiff was a little north of Brady he changed his course and started to run north within half a foot of the right rail. After plaintiff started running up the track, defendant started ringing his gong continuously. When plaintiff was 90 to 100 feet south of the south end of the zone, he looked over his shoulder. Whether he was looking for traffic or for a streetcar, is left unsettled by the record. When defendant got to the south end of the safety zone, he was going 4 or 5 miles per hour. The last he saw, plaintiff had run up to the end of the safety zone and turned to the right as if to cross the

---

* See CL 1948, § 617.66 (Stat Ann § 27.915).—Reporter.

street. At that time defendant was approximately 3 yards south of plaintiff. The defendant did not know whether the streetcar hit the plaintiff, or the plaintiff ran into the streetcar.

A police officer, who was assigned to investigate the accident, testified that the streetcar was stopped after the accident about three quarters of the way past the south end of the safety zone, which was 80 to 90 feet long. He testified that sand was applied by the defendant in an attempt to stop the car, "a spot about 10 feet more or less south of the safety zone."

The trial court, in granting defendant's motion for judgment *non obstante veredicto,* said:

"I * * * think your man (the plaintiff) was negligent, I think the negligence continued, and I am going to find that he was contributorily negligent as a matter of law, under the cases; and give defendant a judgment of no cause for action. * * *

"I did submit the question, however, to the jury at plaintiff's request. I do not think there was any subsequent negligence in the case."

Appellant relies on recent decisions of the Court in *St. John* v. *Nichols,* 331 Mich 148, and *Phillips* v. *Marten,* 331 Mich 330. His claim is that even if the plaintiff was guilty of contributory negligence, he should be allowed to recover on the theory that the defendant was guilty of subsequent negligence. A reading of those decisions shows the controlling difference in their factual circumstances from the case at bar. In the *St. John Case,* appellant overlooks the essential fact that the plaintiff's contributory negligence had ceased to operate as a proximate cause of the accident, caused by the defendants' subsequent negligence. The *Phillips Case* held that subsequent negligence had no bearing on the result. The facts in the instant case are

similar to those in *Kneebone* v. *Lake Superior District Power Co.*, 248 Mich 403, where this Court reversed a judgment for a plaintiff who was walking in front of a streetcar, and held that the trial court should have granted the defendant's motion for judgment *non obstante veredicto.*

Considering the testimony in the light most favorable to the plaintiff, we agree with the trial court that the plaintiff was guilty of contributory negligence, and hold that there is no room in the case for a finding that plaintiff's negligence had ceased to operate as a proximate cause of his injury before the accident occurred. In *Davidson* v. *City of Detroit*, 307 Mich 420, wherein many cases bearing on the question of subsequent negligence were discussed, the Court held that the plaintiff was guilty of contributory negligence as a matter of law in going into a place of obvious danger without observing whether she could do so in safety. The Court held (syllabi):

"A reasonably prudent man will not take a chance of streetcars slowing up to let him cross a street.

"The fact that a would-be passenger of a streetcar who gave signals of her desire to become a passenger had a right to assume that the streetcar would stop at safety zone which she approached in front of car did not obviate the necessity of taking usual precaution before attempting to cross the track in front of the streetcar that showed no evidence of slowing down.

"In order to apply the doctrine of subsequent negligence so as to permit recovery by plaintiff, her negligence must have placed her in a position of danger and then ceased to operate as a proximate cause, and it must be clearly proved that defendant must have discovered, or by the exercise of ordinary care and diligence should have discovered, plaintiff's peril and have had sufficient time and ability to avoid resulting harm by ordinary care and diligence in the use of the means at hand and failed to use it to avert the threatened injury.

"Plaintiff may not recovery damages for injuries sustained, where defendant's negligence was concurrent with, and not subsequent to, plaintiff's contributory negligence.     *     *     *

"Where both parties are guilty of concurrent negligence as a matter of law, the doctrine of subsequent negligence has no application."

Affirmed, with costs.

NORTH, C. J., and DETHMERS, BUTZEL, CARR, BUSHNELL, SHARPE, and REID, JJ., concurred.